UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DOUGLAS JONES,

    Defendant.
_____/

Case No: 24-20427

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS [25] AND TO SUPPRESS [26]**

Defendant Douglas Jones has been charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 22.) The matter is before the Court on Defendant's motion to dismiss the indictment (ECF No. 25) and Defendant's motion to suppress evidence seized during the execution of a search warrant and requesting a *Franks* hearing (ECF No. 26). The Government filed a response opposing each motion. (ECF Nos. 29; 30.) The Court held a hearing on the motions on December 16, 2024.

In his motion to dismiss, Defendant argues 18 U.S.C. § 922(g) is unconstitutional on its face and as applied to him. (ECF No. 25, PageID.65-76.) Defendant argues that the Sixth Circuit's historical analysis of whether § 922(g) is consistent with the Nation's tradition of firearm regulation in *United States v. Williams* was in error and that the statute is unconstitutional on its face. (ECF No. 25, PageID.65-76.) Defendant also argues that §922(g) is unconstitutional as applied to him. *Id.* at 76-78.

1

In his motion to suppress, Defendant argues that the affidavit supporting the search warrant application was knowingly submitted with false statements and with a reckless disregard for the truth and does not establish probable cause. (ECF No. 26, PageID.87-91.) Defendant claims that the police officer who submitted the affidavit knowingly included false statements from V1, an informant, and recklessly excluded material information from the affidavit. (ECF No. 26, PageID.87-90.) For the reasons below, the Court DENIES Defendant's motions.

I.   **Background**

According to the affidavit submitted by Officer James Reeves, this case arises out of an argument between Defendant and V1, Defendant's girlfriend's brother, in the early morning of June 13, 2024. (ECF No. 26-1, PageID.109-10.) Upon returning home from work, Jones found V1 watching videos on his phone at the kitchen table. *Id.* Jones told V1 he needed to go sleep in the basement. *Id.* This led to an argument that continued until other family members told V1 to leave the house. *Id.* As V1 was leaving, he started taking pictures of the license plate of Defendant's vehicle. *Id.* At this time, V1 states he saw a green laser pointed at him by Defendant from the window of the residence's primary bedroom. *Id.* V1 states he observed this laser coming from what he believed to be an "AR" rifle equipped with a laser held by Defendant. *Id.* The incident ended with V1 leaving and going to report the events to Detroit Police. *Id.*

Affiant then conducted a background check on Defendant using the Law Enforcement Information Network ("LEIN"), which revealed Defendant is not allowed to possess firearms due to a felony conviction. *Id.* The LEIN check also showed Defendant has two subsequent felony convictions for firearm possession. *Id.* The LEIN check

2

confirmed Defendant's registered address is the address provided by V1 in his statements to police and that Defendant has a vehicle registered to him with the license plate number V1 provided. *Id.* On June 17, 2024, Affiant conducted a phone interview with V1, during which V1 confirmed the report he made to Detroit Police and added that Defendant told V1 that he obtained a rifle in recent months and that sometime in the last six months he showed V1 a black handgun that Defendant is known to regularly carry. *Id.* On June 18, 2024, Affiant conducted surveillance of Defendant's address and observed the vehicle registered to Defendant parked in the driveway. *Id.* Affiant submitted an affidavit seeking a search warrant with the foregoing information to a magistrate later that day, and the magistrate issued a search warrant with Defendant's home, vehicle, and cell phones as places to be searched. *Id.* at 114-115.

The complaint against Defendant alleges that Detroit Police officers executed the search warrant on June 19, 2024. (ECF No. 1, PageID.5.) Officers stopped Defendant after he began driving his vehicle away from his house. *Id.* During the stop, Defendant told officers he had a pistol in the vehicle. *Id.* Officers recovered a handgun with a laser accessory attached. *Id.* While searching Defendant's home, officers recovered three additional weapons and ammunition from his bedroom.[1] *Id.* at 6. A day later, while in custody, Defendant told officers that he retrieved the handgun recovered from his vehicle during the argument, but he denied pointing it at V1. *Id.* at 7.

## II.     Motion to Dismiss Legal Framework

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right." This right

---

[1] Specifically, officers recovered a 12-gauge shotgun, a .45-caliber rifle, and another pistol. (ECF No. 1, PageID.6.)

protects the ability to keep, for "lawful purposes," the kinds of weapons in common use, like those used for self-defense. *Id.* at 624-25. Following *Heller*, courts of appeals developed a two-step means-end test when considering the constitutionality of firearm regulations. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18 (2022). Under that test, courts asked whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *See id.* If the answer was yes or was unclear, the second step was to apply the appropriate level of scrutiny to assess the strength of the government's justification for regulating the exercise of the right. *Id.* at 18-19.

In *Bruen*, the Supreme Court rejected the means-end framework, stating that it involved "one step too many," and set forth a new text-and-history test. *Id.* at 19. Under this test, courts must first ask whether the plain text of the Second Amendment covers an individual's conduct—in other words, whether the individual is among "the people" as used in the Second Amendment. *Id.* at 24, 31-32. If the answer is yes, "the Constitution presumptively protects that conduct" and the regulation is not constitutional simply because it promotes an important interest. *Id.* at 17. Instead, the government must affirmatively prove "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Although *Bruen* overturned the framework courts had developed based on *Heller*, some courts continued to reject as-applied constitutional challenges to § 922(g)(1) by relying on the dicta in *Heller*, 554 U.S. at 626, which states that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *See, e.g.*, *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024).

4

The Sixth Circuit, however, recently disagreed, finding that it must abide by "*Bruen*'s mandate to consult historical analogs." *See United States v. Williams*, 113 F.4th 637, 648 (6th Cir. 2024). To succeed on a challenge that § 922(g) is invalid on its face, Defendant must show that "there exists 'no set of circumstances under which the Act would be valid.'" *Id.* at 657 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). After applying the text-and-history test, the *Williams* court concluded "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." *See id.* at 662-63. In an as-applied challenge, the burden rests on the defendant to show that he is not dangerous. *Id.* at 662.

The *Williams* court noted that criminal offenses can be divided into three categories. *Id.* at 663. The first category encompasses "crime[s] against the body of another human being, including (but not limited to) murder, rape, assault, and robbery." *Id.* The second category involves "crime[s] that inherently pose[] a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id.* "An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* The third and "more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id.* The court stated that "many of these crimes don't make a person dangerous." *Id.* at 659.

When making a finding regarding dangerousness, courts "must focus on each individual's specific characteristics," and in doing so, "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" "as well as other judicially noticeable information." *See id.* at 657-660. The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions

5

when assessing a defendant's dangerousness" but left "the question of what information is relevant for another day." *Id.* at 658 n.12.

## III.  Analysis

Defendant argues that the Sixth Circuit's conclusion as to the history part of the *Bruen* text-and-history test is wrong, and § 922(g) is not consistent with the Nation's regulatory tradition. As mentioned above, the Sixth Circuit held that § 922(g) is valid on its face. *Id.* at 657. The result in *Williams* is binding on this Court. Accordingly, Defendant's facial challenge cannot succeed here.

Defendant also argues he is not dangerous and § 922(g) is unconstitutional as applied to him. (ECF No. 25, PageID.77-78.) Defendant states that "it has been almost twenty years since his only violent criminal offense." *Id.* Defendant appears to be referring to his conviction in 2000 in which he pled guilty to attempted first-degree home invasion, a felony, and domestic violence, a misdemeanor. (ECF No. 30-2, PageID.188.) Defendant notes he was not incarcerated for either of those offenses and that his remaining convictions did not involve violent confrontations. (ECF No. 25, PageID.78.) Finally, Defendant points to a quality employment track-record in recent years as well as his familial relations as evidence he is not dangerous. *Id.*

Turning to Defendant's criminal record, he has been convicted of three felonies.[2] (ECF No. 30-4, PageID.304-08.) This includes his conviction for attempted first-degree home invasion, which likely falls in the first *Williams* category. At the same time, Defendant was also convicted of domestic violence, which, although a misdemeanor

---

[2] Defendant also previously pled guilty to two misdemeanors: embezzlement of $200 or more but less than $1,000 and second-degree retail fraud. (ECF No. 30-4, PageID.307.) These crimes fall into the third category as described in *Williams*. *United States v. Williams*, 113 F.4th 637, 669 (6th Cir. 2024).

under Michigan law, is a crime against the body of another human being. *See* Mich Comp. Laws § 750.81(2). Commission of Michigan's first-degree home invasion law requires either that the person be armed with a dangerous weapon or that another person be present at the dwelling. Mich Comp. Laws § 750.110(a)(2). Even if another person was not present, this at minimum falls within the class of crimes that "inherently pose[] a significant threat of danger." *Williams*, 114 F.4th at 663. Defendant's subsequent felonies involve him illegally possessing a firearm. (ECF No. 30-4, PageID.304-08.) While Defendant argues these offenses do not show dangerousness, the court in *Williams* indicated support for including a conviction for possessing a firearm as a felon in the second category. 114 F.4th at 662 (stating "[t]he government could've pointed to any one of those convictions to demonstrate his dangerousness" after listing a conviction for possessing a firearm as a felon in that defendant's criminal record). If nothing else, this repetitive conduct shows Defendant's lack of regard for the law. With this serious criminal record at hand, Defendant has not met his heavy burden to show he is not dangerous.

## IV.    Motion to Suppress Legal Framework

Defendant requests an evidentiary hearing, known as a *Franks* hearing, to examine whether Affiant knowingly included false statements or acted with reckless disregard for the truth by omitting information in the affidavit. *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding the "Fourth Amendment requires that a hearing be held" if a defendant makes the necessary preliminary showing). To be entitled to a *Franks* hearing, Defendant must make a "substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit [and] prove[] that the false statement or

7

material omission is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) (citing *Franks*, 438 U.S. at 171-72). If a hearing is later held and Defendant shows that false material was included in the affidavit, then the false or misleading information is excised therefrom. *Franks*, 438 U.S. at 156. If the affidavit read without that information is insufficient to establish probable cause, the search warrant is voided and the fruits of the search are excluded from evidence. *Id.*

Generally, a search or seizure must be conducted pursuant to a warrant issued for that purpose upon a showing of probable cause. *See* U.S. Const. amend. IV; *California v. Carney*, 471 U.S. 386, 390 (1985). For a search warrant application, the issuing magistrate must find that there is a "fair probability that contraband or evidence of a crime will be found in a particular place" given all the circumstances set forth in the affidavit. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A court reviewing a magistrate's decision is limited to examining the information contained in the affidavit and must ensure the magistrate had a "substantial basis" for finding probable cause existed. *Id.* at 238-39.

**V.     Analysis**

Defendant submits that the false information knowingly included by Affiant is V1's statement that he observed Defendant pointing what he believed to be an assault rifle equipped with a laser pointer at him. (ECF No. 26, PageID.89.) This claim fails to establish a substantial preliminary showing. First, Defendant does not offer proof that the statement is false other than his claim itself. *See Franks*, 438 U.S. at 171 ("allegations of deliberate falsehood . . . must be accompanied by an offer of proof . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence

satisfactorily explained."). Second, if the statement were shown to be false, Defendant has not offered proof that Affiant knowingly and intentionally included it as such.

Defendant claims that Affiant acted with a reckless disregard for the truth by relying on only one witness, V1, who told police he and Defendant were both drinking at the time of their argument in his statements to police. (ECF No. 26, PageID.89.) Defendant further argues Affiant knew this information because it is included in the police report referenced in the affidavit, that it "casts serious doubt" on V1's reliability, and, therefore, its exclusion was an intentional, material omission. *Id.* While Defendant succeeds in showing Affiant knew of the information when he submitted the affidavit, he fails to show its materiality. This is because, if that information is material when considered alone, it becomes not-so when considered alongside Affiant speaking to V1 four days later when V1 confirmed his prior statements to police. (ECF No. 26-1, PageID.110.) Defendant also does not offer proof for his claims that V1 was "intoxicated" or "drunken" because of his drinking.

Defendant also argues the affidavit fails to establish probable cause on its face because V1 should be considered a confidential informant and Affiant did not sufficiently corroborate his statements or reliability. (ECF No. 26, PageID.91-100.) As an initial matter, V1 is not a confidential informant or victim. V1 is known to police and was named in the affidavit submitted to the magistrate. *See United States v. May*, 399 F.3d 817, 823 (6th Cir. 2005) ("In order for a confidential informant to be deemed 'known,' . . . the affidavit must acknowledge that the police know the informant's identity or that the identity has been disclosed under oath to the issuing judge."). Sixth Circuit precedent has "clearly held that a known informant's statement can support probable cause even though the affidavit fails to provide any additional basis for the known informant's credibility and the

9

informant has never provided information to the police in the past." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013). Further, when an informant's "identity [is] known to the police and . . . would be subject to prosecution for making a false report," their statements are "entitled to far greater weight than those of an anonymous source." *May*, 399 F.3d at 824-25 (6th Cir. 2005). Here, V1's identity is known to police and the issuing judge, and he has subjected himself to the possibility of prosecution for making a false police report. *See* Mich. Comp. Laws § 750.411a. Further, Affiant did corroborate some details of V1's statements. Affiant verified the address and vehicle information provided and that Defendant has felony convictions which prohibit him from possessing a firearm. (ECF No. 26-1, PageID.109-14.) While this corroboration is not substantial, it and the totality of the circumstances set forth in the affidavit establish sufficient reliability for V1 and probable cause. Defendant has failed to make the requisite substantial preliminary showing for a *Franks* hearing, and the affidavit is sufficient to conclude the magistrate had a "substantial basis" for finding probable cause existed.

## VI. Conclusion

For the foregoing reasons, Defendant's motion to dismiss and Defendant's motion to suppress are DENIED.

SO ORDERED.

                                          s/ Nancy G. Edmunds
                                          Nancy G. Edmunds
                                          United States District Judge

Dated: January 8, 2025

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 8, 2025, by electronic and/or ordinary mail.

                s/ Marlena Williams
                Case Manager